INVESTMENT Co. OF PHILADELPHIA *v.* OHIO & N. W. R. Co. *et al.*

(*Circuit Court, S. D. Ohio, W. D.* June 1, 1891.)

RAILROAD MORTGAGE—FORECLOSURE—ALLOWANCE TO COUNSEL.

Where in the foreclosure of a railroad mortgage the complainant is the holder of a majority of the bonds secured, and the trustee, by agreement with the complainant, has declined to act in the foreclosure proceedings, and is made a co-defendant, and full allowance has been made to the counsel of complainant and to the receiver for his services, all for duties which by the mortgage were assigned to the trustee, it was not error to refuse an allowance also to the trustee's counsel.

In Equity.

*Alexander & Green,* for trustee.

*Howard C. Hollister, contra.*

SAGE, J. This cause is before the court upon an application by the trustee under the mortgage for compensation and for counsel fees, to be paid out of the proceeds of sale of the defendant company's road under decree of foreclosure. The mortgage was made by the defendant the Ohio & North-Western Railroad Company to the defendant the Mercantile Trust Company, to secure bonds issued by the first-named defendant company. It is in the usual form. It provides that, upon the default of the mortgagor to pay its interest coupons within six calendar months after their maturity and after demand, the bonds themselves shall become due and payable, and after demand of payment the trustee shall, upon the written request of the holders of a majority, enter upon and take possession of the railroad, its equipments, and all the property included in the mortgage, and operate the road for the benefit of the bondholders; and that said trustee shall, at the written request of the holders of a majority of the bonds, proceed to foreclose. The com-

plainant company is the holder of a majority of the bonds secured by the mortgage, and of other claims which are prior liens upon the mortgaged property. The foreclosure proceedings were, with the consent of the Mercantile Trust Company, conducted by the complainant. The trust company filed an answer to the bill, and to each of seven cross-bills, which set up liens claimed to be prior to the mortgage. These answers are merely formal, and in terms leave the conduct of the cause to the complainant. Upon the complainant's motion, and with the consent of the trust company, a receiver was appointed shortly after the filing of the bill, and the road was transferred to his possession, and operated by him, under the direction of the court, until the confirmation of the sale.

The statement of services rendered by counsel, which was filed with the application, shows numerous consultations with the officers and counsel of the complainant company with reference to the proceedings in the cause, and frequent correspondence. It is urged in support of the application that, while there is no reported case in its favor, such allowances have been repeatedly made; citing *Central Trust Co.* v. *St. Louis, A. & T. Ry. Co.*, where allowances were made to counsel for services rendered by them on behalf of the defendant companies; but, as it appears from the statement of counsel, those allowances were granted substantially on the consent of all parties to the litigation. That cause was pending in the eighth and fifth circuits, but the principal cause proceeded in the eighth. The same course was pursued in reference to an allowance to counsel representing some of the defendants in the suit of the *Mercantile Trust Co.* v. *Missouri, K. & T. Ry. Co.*, which was also in the eighth circuit. In that cause, too, the allowance was agreed upon by the parties, and the matter did not come before the court. In the case of *Central Trust Co.* v. *Wabash, St. L. & Pac. Ry. Co.*, in the seventh circuit, an allowance was made by the court to the Mercantile Trust Company, cross-complainant. That case was like this, in that the proceeding was originally in the nature of an application for the appointment of a receiver; the ostensible purpose of the bill being to preserve the property for the benefit of all its creditors. The case is not reported. As stated by counsel, it was originally begun "by rather an anonymous proceeding on behalf of the defendant railway company." The Central Trust Company, as the mortgagee of the principal mortgage, was made a party defendant, but it had commenced an independent suit in the state court of Indiana. Shortly after the original bill was filed, that suit was removed to the federal court, and the causes were consolidated, and thereafter proceeded as a consolidated cause. There were really no proceedings under the Wabash bill, excepting the appointment of a receiver. About the time that the Central Trust Company, complainant in the consolidated cause, was ready to take a decree of foreclosure, it was thought for the best interests of all concerned that a subsequent collateral trust mortgage executed to the Mercantile Trust Company should be foreclosed, and that company thereupon answered and filed its cross-bill, (which was very short,) and the defendant company and the Cen-

tral Trust Company immediately answered, and a decree was thereupon had. The actual proceedings of the Mercantile Trust Company, as cross-complainant, were very simple. The matter of compensation and allowances of that company, and for its counsel, was referred to a special master. In his printed report of the proceedings in the cause he finds that counsel had rendered exceptional services to the Wabash Company from the very inception of the litigation, for which they had been allowed and paid the sum of $3,000. The master reported that the services of counsel had greatly aided in rendering possible a speedy ending of the litigation, and the saving of a considerable amount of money to the holders of the bonds secured by the mortgages to the Central Trust Company and the Mercantile Trust Company. He recommended an allowance for the services rendered by counsel for both companies, and in the two different capacities in which they acted. The matter was carefully considered by the court upon exceptions to the master's report, on behalf of some of those who were largely interested in the property. The report was confirmed, with possibly some slight reductions in the amounts. According to the statements of counsel, which I have no doubt are correct, allowances were granted in the same cause to counsel for the Wabash Company.

It is urged in support of the application now made that the Mercantile Trust Company declined to proceed in this cause at the express solicitation of the investment company, with the understanding that the trust company should become a cross-complainant. That course, it is stated, was not pursued because of the request of counsel for the complainant, on the ground that it would lead to a postponement of the ultimate result sought, namely, the foreclosure of the mortgage, and the sale of the property; the bill having been filed before the expiration of six months after default of payment of interest upon the bonds, and that the interests of all concerned would be furthered by the trust company merely continuing to be a party defendant, and joining in its answer in the prayer of the complainant's supplemental bill, which was filed after the expiration of six months' default upon the bonds. The statement of counsel is frank and full, and as to its facts is admitted to be true. It is proper, also, that it should be stated that the complainant company does not oppose the application, neither does it formally consent. It is neutral, and submits the matter to the decision of the court.

In the case of *Central Trust Co.* v. *Wabash, St. L. & Pac. Ry. Co.*, last above referred to, the finding was that counsel for the Mercantile Trust Company by their services not only aided in rendering possible a speedy ending of the litigation, but also saved a considerable sum of money to the holders of the mortgage bonds; and the allowance seems to have been made for that reason. The case is altogether distinguishable from the case now before the court. The Mercantile Trust Company was not merely a defendant, but was a cross-complainant, representing the mortgage made to it as trustee. But that is not this case. Here the only aid was by declining to act, and by consenting that the proceedings should be conducted by the investment company. The remarks of Chief

Justice REDFIELD in *Sturges* v. *Knapp*, 31 Vt. 54, are directly applicable. Speaking of trustees under a railroad mortgage to secure the payment of bonds, he said:

"We think it could scarcely escape the notice of any one who had seriously and patiently attempted to master this question that until the actual foreclosure of the mortgage the trusts involved in the contract, and imposed upon the trustees named, are entirely fiduciary and executory. At first, and so long as prompt payment is made, it is understood, in practice, indeed, that the office of such trustees is rather silent, and the duties of the trustees, by means of the negotiability of the bonds and of the coupons attached, are ordinarily performed, or expected to be performed, by the corporation officers."

In this cause at the outset a receiver was appointed, and the property passed into his possession, and came under his management. The trustee never has had possession of the property. It has been repeatedly held in this circuit, but not in any reported case, that the court will not allow compensation to the trustee under the mortgage to be paid out of the proceeds of sale. Upon an application very like the present one, in the unreported case of *James R. Jesup et al.* v. *Wabash, St. L. & Pac. Ry. Co. et al.*, in the United States circuit court at Toledo, for the northern district of Ohio, counsel for the minority bondholders, claiming to represent the trust, and who were defendants in the suit, were denied allowance or compensation out of the proceeds of sale of the mortgage property. Judge JACKSON made the ruling in that case. He concurs with me that in this case counsel for the Mercantile Trust Company are not entitled to any allowance or compensation out of the proceeds of the mortgage property. When the trustee under the mortgage has declined to act or to proceed to foreclose, neither it nor its attorney can thereafter properly claim allowances upon foreclosure out of the proceeds. It does not matter for what reason the trustee declined to act. The suit was conducted by the investment company, as complainant, on behalf, also, of all the other bondholders. Full allowance has been made and paid out of the proceeds of sale to its counsel, and full payment has been made to the receiver for his services in caring for the property, and operating the road. All the allowances, therefore, which could have been expected had the trustee, in accordance with the stipulations of the mortgage, taken possession of and operated the road, and by its counsel conducted the proceedings in foreclosure, have been made to those who upon the trust company's declination rendered services which were by the mortgage assigned to the trustee. The services rendered by counsel for the Mercantile Trust Company in preparing and filing answers, in keeping an eye upon the proceedings, and in consulting from time to time with counsel for the complainants, were all doubtless well enough; but it cannot be said that they so contributed to the progress of the cause as to entitle them to be paid out of the proceeds of sale. Besides, they are not services provided for in the deed of trust. In *Tracy* v. *Gravios Railroad Co.*, 13 Mo. App. 295, it was held that a trustee can receive pay out of the trust fund for such services and expenditures only as are within the line of duties imposed upon him by the instrument

creating the trust. The court said that the true test was "whether the services and expenses for which he demands compensation and reimbursement were either directed by the terms of the deed of trust, or were necessary to a performance of the duties imposed upon him by that instrument." The opinion of the court will be found to be instructive. The ruling was affirmed in 84 Mo. 210, the supreme court there adopting the reasoning and approving the conclusion reached by the court below.

The application will be denied.